REBSAMEN MOTORS, INC. *v.* MORRIS.

5-1612 317 S. W. 2d 141

Opinion delivered October 13, 1958.

[Rehearing denied November 17, 1958]

*Talley & Owen,* by *William L. Blair* and *James R. Howard,* for appellant.

*Martin K. Fulk* and *Gentry & Gentry,* for appellee.

Ed. F. McFADDIN, Associate Justice. The question in this case is whether usury tainted the sale of the automobile involved.

On July 20, 1951 Tony Morris contracted to purchase a 1949 Ford automobile from Rebsamen Motors, Inc. Here are the figures as reflected in the Conditional Sales Contract:

| | |
|---|---|
| Total Cash Price | $1,345.00 |
| Total Time Price | 1,608.25 |
| Less Trade-in of Old Car | 535.00 |
| Unpaid Balance of Time Price | 1,073.25 |

Morris signed a note for $1,073.25, payable in fifteen monthly installments of $71.55 each. He paid some of these monthly installments and then sued to cancel the contract because of usury (§ 68-602 *et seq.* Ark. Stats.).

Morris claimed that the difference between the $1,608.25 (total time price) and $1,345.00 (total cash price) was $263.25; that $101.50 of this was for insurance; and that the balance of $161.75 was for "finance charges", which amount was in excess of 10 per cent per annum, the interest on the amount actually due if calculated on the *total cash price* instead of the *total time price*. In other words, Morris claimed that the "finance charge" was a cloak for usury. The Trial Court agreed with Morris and entered a decree cancelling any balance claimed by Rebsamen. This appeal ensued.

We call particular attention to the fact that this transaction was on *July 20, 1951*. We also mention that the date of finality of our holding in the case of *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, was *June 30, 1952*. If the transaction here involved had been *after* the final date of the Hare case, then the decree herein would be affirmed. In the Hare case we pointed out that the "time price differential" which had allowed finance charges and other charges in excess of 10 per cent had been approved in a long line of cases and we would not upset those holdings retrospectively; and then we said:

"But the time has come when we must re-examine these holdings, so we now give the public a *caveat* that the effect of transactions, such as in the case at bar, may impinge on the constitutional mandate against usury, and transactions entered into after this appeal becomes final, may be subjected to the taint of usury with the aforementioned decisions affording no protection."

In numerous cases since the Hare case we have upheld, as against the claim of usury, contracts like the one here involved *which were entered into before the date the Hare opinion became final.* Some of these cases are: *Crisco* v. *Murdock,* 222 Ark. 127, 258 S. W. 2d 551; *Universal C.I.T. Credit Corp.* v. *Crossley,* 222 Ark. 200, 258 S. W. 2d 562; *Murdock Acceptance Corp.* v. *Clift,* 222 Ark. 313, 259 S. W. 2d 517; and *Universal C.I.T. Credit Corp.* v. *Hall,* 225 Ark. 78, 279 S. W. 2d 281. The case at bar cannot be distinguished from the cases last cited.

Therefore, the decree is reversed and the cause is remanded, with directions to enter a decree for appellant for the unpaid balance of principal and interest due on said contract involved, together with costs.